## THE NETTIE.

### THE FRANK C. KUGLER.

(District Court, E. D. Virginia. May 3, 1909.)

TOWAGE (§ 15*)—INJURY TO TOW—MUTUAL FAULTS.

   While a tug was towing four barges on a hawser down Pamlico Sound at night, during a storm, her hawser parted, setting the tows adrift. She signaled them to anchor, and herself proceeded to a port. One of the barges drifted upon a shoal and grounded, losing her cargo and receiving serious injury. *Held*, on the evidence, that the hawser supplied by the tug which had been spliced was unsuitable and insufficient for the service, and rendered her liable for the injury; that the barge was also in fault for failing to anchor properly, and that the damages should be divided, the preponderance of the evidence showing that she drifted for an hour before grounding.

   [Ed. Note.—For other cases, see Towage, Cent. Dig. § 36; Dec. Dig. § 15.*]

In Admiralty. Suit against tug for grounding of tow.

Floyd Hughes, for libelant.
Edward R. Baird, Jr., for respondent.

WADDILL, District Judge. The libel in this case was filed in behalf of the owners of the barge Frank C. Kugler, and the owners of the cargo of phosphate on board thereof, to recover of the respondent the damages occasioned by the grounding of the Kugler, while in tow of the tug Nettie, along with three other barges, in the waters of Pamlico Sound, N. C.

On the night of the 4th of November, 1908, the Nettie had in tow the barge Kugler, and three other barges—the Sallie, the C. G. Blades, and the J. B. Blades—en route from Norfolk, Va., to Bayboro, N. C., the Kugler being the hawser barge, loaded with a cargo of 531 tons of fertilizer, and the other three barges being light. The tow started from Norfolk on the 30th of October, 1908, then consisting of the first three barges named and certain lighters, and after passing through the canals, having dropped the lighters en route, and taken on instead the fourth barge, the J. B. Blades, on the night of the 4th of November, 1908, while proceeding down Pamlico Sound, in the vicinity of the Old Tower Light, on the Royal Shoals, and, after having passed the Bluff Shoal Light some four or five miles, about 10:30 p. m., encountered a severe gale, which resulted in the tug's hawser parting, and setting the tow adrift; whereupon the tug gave signals indicating the parting of the hawser, and the necessity of the tow coming to anchor, and immediately proceeded to the nearest harbor, neither standing by the tow, nor awaiting to see that the barges were properly anchored. Some time thereafter, variously estimated at from 20 minutes to 2 hours, the Kugler grounded on the Royal Shoal, where she remained some days, and until removed by the Merritt & Chapman Wrecking Company. The damage to the Kugler was quite serious, and her cargo a total loss. The other barges, after the Kugler grounded, cast anchor, and sustained no injury.

The grounds of negligence alleged by the libelant and respondent, respectively, against each other, are many; but the case turns upon whether, as claimed by the libelant, the tug was equipped with an unsuitable and insufficient hawser; whether the tow was being navigated too closely to the Royal Shoal, and run aground; or whether, as claimed by the Nettie, the hawser parted at a point some mile and three-quarters to the northwestward of the Old Tower Light, on Royal Shoal, and the Kugler failed promptly and properly to cast her anchor, thus drifting upon the shoal and grounding.

Many witnesses were examined by the parties respectively, including the crews of the tug and barges, and several experts, as to the sufficiency of the hawser, as also persons familiar with the waters of Pamlico Sound, who testified as to the probability or improbability of the happening of the accident as claimed by the parties.

The conclusion reached by the court upon the whole case is:

First. That the tug Nettie was not equipped, at the time of the parting of the towline, with a sufficient and suitable hawser for the purpose of performing the work in hand, as was required of her, and for loss arising thereby she is liable. The Britannia (D. C.) 148 Fed. 495, 499, and cases cited. Considerable evidence was introduced by the respondent tending to show the exercise of proper care in the selection of this hawser; but after giving much consideration to the

170 FEDERAL REPORTER.

same, the fact that it was a spliced hawser, and parted at least twice when its strength was tested, satisfies the court that it was not a suitable and safe appliance for the service required, taking into account especially the dangers liable to, and which did, arise from encountering heavy seas in Pamlico Sound.

Second. The questions of negligence in the navigation of the tow, the place of the parting of the hawser, and grounding of the Kugler should be considered together. If the Kugler grounded, as contended for by the libelant, virtually at the time of the parting of the hawser on Royal Shoal, in the vicinity of the Old Tower Light, as distinguished from a mile and three-quarters to the westward thereof, then the question of negligence arising from improper navigation would be quite apparent. But if the barge was allowed to drift at this point, and ground, after the parting of the hawser, and after proper signals had been given by the tug to come to anchor, by reason of the barge's navigator's failure to perform his duty in promptly anchoring, a different condition arises. The correct solution of these questions can only be determined from a full review of all the testimony. After the most careful consideration the court can give, having seen and heard the witnesses testify, most of whom are intelligent, and all doubtless conscientious in their several statements, the finding of the court is that, from the very large preponderance of the testimony, the barge did not ground, as contended for by her, a few minutes after the parting of the hawser, but, on the contrary, the hawser parted when she was some distance from the location in which she grounded, and that subsequently, and at least an hour after the hawser parted, the barge drifted and grounded upon Royal Shoal, which was due in part either from the failure promptly to anchor the barge, or the dragging of the port anchor, which was the only one cast out. The storm at the time was terrific; the night very dark; and the navigators of the three remaining barges all testified to the failure of the Kugler to anchor, and of drifting for at least an hour, and the Kugler does not claim to have put out but one anchor, and that the lighter of the two she had on board; her navigator's statement being that it was only necessary to put out one, as he found he was in shoal water. The testimony, however, in this regard strongly preponderates against his statement, and there is also some evidence to show that the Kugler's master, by reason of the storm, was disabled from seasickness, which may possibly account for his dilatory and inefficient action in caring for his barge after the parting of the hawser. Be that as it may, it sufficiently appears to the court that he did not promptly exercise the degree of care that he should have done, having regard to the necessity for safe anchorage of his barge, and the neglect of which in part caused the loss.

Third. Having reached the conclusion that the damage to the Kugler and her cargo arose from the joint and concurring negligence of the tug and the Kugler, it follows that the damages arising from the occurrence should be divided between them, and a decree determining the question of fault and dividing the damages may be entered.